UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CUVAS ELLIS,

          Plaintiff,

  -against-                    **MEMORANDUM AND ORDER**
                                   Case No. 05-CV-3847 (FB) (KAM)

LONG ISLAND RAIL ROAD COMPANY
d/b/a/ LONG ISLAND RAIL ROAD,

          Defendant.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                              *For the Defendants*:
DAVID GABOR, ESQ.                   CATHERINE A. RINALDI, ESQ.
Gabor & Gabor                                   General Counsel
400 Garden City Plaza, Suite 406         By: BRIAN K. SALTZ, ESQ.
Garden City, NY 11530                   The Long Island Rail Road Company
                                                   Law Department - 1143
                                                   Jamaica Station
                                                   Jamaica, NY 11435-4380

**BLOCK, Senior District Judge:**

       Plaintiff, Cuvas Ellis ("Ellis"), sues his employer, defendant, Long Island Rail Road Company ("LIRR"), alleging that LIRR violated Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). In essence, Ellis alleges that several disciplinary actions taken by LIRR between 1999 and 2003 constituted either (1) disparate treatment based on race, (2) retaliation or (3) a racially hostile work environment.[1]

---

[1] Ellis' complaint makes no attempt to separate the various disciplinary actions into discrete claims; rather, he treats several years' worth of employment history as a single, amorphous basis for his claims. As a result, the Court has had to devote substantial effort to trying to untangle and understand the claims.

LIRR now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court held oral argument on March 18, 2008, at which time Ellis voluntarily dismissed his claims under § 1981, the NYSHRL and the NYCHRL, as well as his claim for punitive damages. Thus, only his claims under Title VII remain.

For the following reasons, LIRR's motion is denied as to Ellis' claim that the discipline assessed in connection with a 2002 train derailment was racially motivated, but granted in all other respects.

I

The facts are taken from the parties' submissions, and are undisputed unless otherwise indicated.

A. Employment History

Ellis, who is black, began working at LIRR in 1988; by 1997, he had been promoted to Supervisor of Track.

*1. 1999 Disciplinary Charges*

In April 1999, LIRR charged Ellis with using his LIRR-issued cell phone to make unauthorized personal phone calls; following an internal adjudication, Ellis was found culpable and demoted. Ellis grieved the demotion; in March 2001, an arbitrator overturned the demotion, reinstated Ellis to his position as Supervisor of Track and awarded him backpay and retroactive seniority. In September 1999, Ellis received another disciplinary charge for being absent without leave ("AWOL"); it is unclear from the record how that charge was resolved or whether it resulted in any adverse consequences.

## 2. *2002 Disciplinary Charges*

On March 21, 2002, there was a derailment on a portion of track for which Ellis was responsible. On April 2, 2002, he received two disciplinary charges, one charging him with failing to follow his manager's instructions to make a track repair, and a second charging him with failing to keep maintenance records required by the Federal Railroad Administration ("FRA"). Two days later, on April 4th, he received a third charge alleging that he had failed to follow his manager's instructions to place a switch back in service. On July 24, 2002, he received a fourth charge alleging that he had instructed a subordinate to falsify a track inspection report.

It is clear that the first April 2nd charge related to the derailment. *See* Decl. of Brian Saltz ("Saltz Decl."), Ex. E ("As a result of your failure to permanently correct the problem as directed in a timely fashion, the track structure weakened significantly during the two-week period contributing to a derailment which occurred on March 21, 2002."). The same cannot be said for the remainder of the 2002 charges, none which made any reference to the derailment. In addition, the second April 2nd charge and the July 24th charge dealt with conduct uncovered "on February 5, 2002 during a routine FRA inspection of [Ellis' records]," *id.*, Ex. L, while the April 4th charge dealt with instructions given in the summer of 2001.

As a result of the first April 2nd charge, Ellis was immediately relieved of his regular duties. LIRR offered to reassign Ellis to another supervisory position at his usual rate of pay. Ellis contends that the offer would have required him to admit to wrongdoing, while LIRR contends that the offer entailed withdrawing all charges; in any event, Ellis did

3

not accept the offer.

On July 26, 2002, following an internal adjudication, Ellis was found culpable on the first April 2nd charge and disqualified from any job in his collective bargaining unit, including his previously held positions of Supervisor and Assistant Supervisor of Track. LIRR thereupon offered Ellis a track worker position, which Ellis rejected as "a significant demotion from [his] former position in terms of pay, job responsibilities, and opportunities for future growth." Aff. of Cuvas Ellis ("Ellis Aff."), ¶ 92. Accordingly, on July 29, 2002, LIRR placed Ellis on "no pay" status; although the record is unclear as to what that status entailed, it did not amount to a formal termination of employment.

On July 31, 2002, LIRR found Ellis culpable on the April 4th charge, but did not impose any additional discipline. At some point, LIRR also found Ellis culpable on the July 24th charge; however, it is unclear what discipline, if any, was imposed.

On January 14, 2003, LIRR completed its adjudication of the second April 2nd disciplinary charge. Ellis was found culpable and terminated. In March 2004, LIRR informed Ellis that due to his termination, he was "no longer permitted on LIRR property with the exception of attending a scheduled appeal meeting in the Labor Relations Department offices in Jamaica Station." Ellis Aff., Ex. RR. At the same time, LIRR posted a number of signs with Ellis' name and photo, stating that he was "not permitted on LIRR property" and that employees should "notify MTA PD if he attempts access." *Id.*, Ex. SS.

Although Ellis contends that he grieved all the 2002 charges, the record reflects that only the second April 2nd charge (i.e., the charge resulting in his termination) and the July 24th charge proceeded through the grievance process. In a decision dated

4

August 24, 2004, LIRR's Labor Relations Department sustained the adjudication of the charges, but modified the discipline from dismissal to disqualification from prior positions. The time since April 2, 2002, when Ellis was relieved of his normal duties, was deemed an administrative suspension for which no back pay was due; the decision further noted that "no back pay would be due in any event, as you were offered another Supervisor position on or about the day you were removed from service, April 2, 2002, . . . which you declined to accept." Saltz Decl., Ex. N at 10. Because the August 24th decision was not completely favorable to Ellis, he requested arbitration; the arbitration proceeding is pending. In the meantime, he has been assigned to the Project Management Division of the Engineering Department; he contends that he earns less in that position than he did as Supervisor of Track, and that the new position carries less responsibility and growth potential. In addition, Ellis applied for two promotions in October 2005; he was disqualified from consideration for both due to his disciplinary history. Although Ellis claims that LIRR also refused to consider him for five other promotions in 2005, there is no evidence that he applied for any of those positions.

## B. Civil Rights Complaints

In July 1999, Ellis filed a complaint with the New York State Division of Human Rights ("DHR"), charging that he had been singled out for discipline for unauthorized cell-phone use based on his race;[2] he maintains that he made a companion

---

[2] As LIRR points out, Ellis' DHR complaint was stamped "Received" on April 26, 2000; however, it concedes that for purposes of this lawsuit, it does not matter whether the complaint was filed in July 1999 or April 2000.

5

filing with the federal Equal Employment Opportunities Commission ("EEOC"), but has not produced it. Ellis does not dispute that he did not file a complaint regarding the AWOL charge with either DHR or the EEOC.

With respect to the 2002 disciplinary charges, Ellis lodged a complaint with Mary Graves ("Graves"), LIRR's Diversity Management Officer, two days after receiving the April 2nd charges; he alleged that each charge was motivated by race discrimination and retaliation for his 1999 DHR complaint. On May 21, 2002, Graves issued a memorandum concluding that Ellis' complaint "was not an EEO-related matter," Ellis Aff., Ex. PP at 4; however, she noted that a while employee responsible for a similar derailment at LIRR's Greenlawn Station had not been disciplined:

> Although [the white employee's] performance history may not be equivalent to Mr. Ellis', the Greenlawn derailment was major and impacted approximately 135 passengers. Due to the magnitude of this incident and the negligent behavior on [the white employee's] part, some level of corrective action should have been taken (e.g. a warning).

*Id.*, Ex. PP at 5. Graves concluded her memo by "stress[ing] the importance of consistency within the department." *Id.*

Other evidence in the record confirms Graves' concern about inconsistent discipline. Frederick J. Calabro ("Calabro"), a white Supervisor of Track, testified at his deposition that there were "several" derailments within his territory, but that he was not disciplined for any of them. Ellis Aff., Ex. I at 19. David George ("George"), LIRR's Chief Engineer between 1999 and 2004, testified that, apart from Ellis, he could not recall any other instance in which a Supervisor of Track had been disciplined because of a derailment.

*See id.*, Ex. D at 61.

On September 26, 2003, Ellis filed a second complaint with DHR; unlike his first DHR complaint, the second was simultaneously filed with EEOC. He alleged that the reason for the 2002 disciplinary charges and his ultimate termination were pretexts for either race discrimination or retaliation for his prior DHR complaint regarding cell-phone abuse.

In February 2005, the DHR concluded that LIRR's treatment of Ellis was based on neither discriminatory nor retaliatory animus. On May 17, 2005, the EEOC adopted the DHR's findings and issued a right-to-sue letter. Ellis timely filed his complaint in this Court on August 12, 2005.

## II

Ellis' claims fall into three categories. First, he contends that the discipline resulting from some of the charges – namely, his demotions in 1999 and 2002, and his eventual termination in 2003, as well as the attendant loss of promotional opportunities in 1999 and 2005 – constituted discrete instances of disparate treatment based on race. Second, he contends that the 1999 charge for being AWOL, the decision to terminate him, the dissemination of posters banning him from LIRR the premises, and the failure to consider him for seven promotions in 2005 constituted retaliation for his various civil rights complaints. Third, he contends that, apart from the discipline imposed, the 1999 and 2002 disciplinary charges themselves constituted a racially hostile work environment. The Court addresses each category of claims in turn.

## A. Disparate Treatment

As an initial matter, the Court notes that Ellis' claims regarding the 1999 disciplinary charge for cell-phone abuse are time-barred. "An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 219 (2d Cir. 2004). Ellis' contention that he filed an EEOC complaint contemporaneously with his DHR complaint in July 1999 is belied by the fact that, unlike his 2003 DHR charge, the 1999 charge bears no companion EEOC charge number. Ellis' contention that the 1999 discipline should be considered part of a "continuing violation" is similarly unavailing in light of *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), in which the Supreme Court unanimously held that discrete discriminatory acts – "such as termination, failure to promote, denial of transfer, or refusal to hire," *id.* at 114 – "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

Thus, the Court confines its analysis to the 2002 disciplinary charges. With respect to those charges, Ellis argues that he was (1) demoted, (2) terminated and (3) deemed disqualified for several promotional opportunities.

### 1. Demotion

Under the familiar burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), a Title VII must first proffer evidence to make out a *prima facie* case of discrimination. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). "Once the plaintiff satisfies his initial, minimal, burden, the burden of production shifts to the

employer to articulate some legitimate, nondiscriminatory reason for the termination, supported by admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* (internal quotation marks and citations omitted). "If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Ellis has made out a *prima facie* case that his 2002 demotion was racially motivated. It is undisputed that he is black, was qualified for his prior job and suffered an adverse employment action. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (describing first three elements of *prima facie* case). The focus, therefore, is whether the demotion "occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in [a protected] class." *Id.* In that regard, Graves' memorandum, along with Calabro's and George's deposition testimony, constitute sufficient evidence to permit a jury to determine whether Ellis was disciplined more harshly than white employees involved in other derailments. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of

9

making out a *prima facie* case."). The same evidence is sufficient to call into question whether LIRR's proffered non-discriminatory reason for the demotion was a pretext for unlawful discrimination. *See Collins v. New York City Transit Auth.*, 305 F.2d 113, 118 n.1 (2d Cir. 2002) (noting that issues regarding fourth element of *prima facie* case and pretext "tend to collapse as a practical matter under the *McDonnell Douglas* framework"). In sum, a jury could reasonably conclude on this record that Ellis was demoted in 2002 based on his race.[3]

## 2. *Termination*

The charge resulting in Ellis' termination (later modified by the Labor Relations Department to a demotion) is more problematic because the only evidence of disparate treatment relates to white employees who were not disciplined for their involvement in derailments; yet the record is unclear as to whether the charge for which Ellis was terminated was related to the derailment upon which the charge resulting in his demotion was ostensibly based. If the charges were related, the same evidence that supports Ellis' claim that his demotion was based on race would be sufficient to defeat summary judgment on his claim that his termination was similarly motivated. Even if the charges were not related, Ellis could plausibly argue that the LIRR's termination decision or the Labor Relations Department's modification of that decision would have been

---

[3]Since Ellis offers several examples of disparate discipline, the Court is not called upon to decide whether a single instance would be sufficient to defeat summary judgment. *Cf. Johnson v. St. Luke's Hosp.*, 2007 WL 3119845, at *8 (E.D. Pa. Oct. 23, 2007) ("A plaintiff cannot establish pretext sufficient to survive summary judgment when relying on only one instance of disparate treatment that contained no overt racial character."); *Blake v. Johns Hopkins Univ.*, 1994 WL 617294, at *4 n.4 (D. Md. Oct. 25, 1994) ("[O]ne instance of alleged disparate treatment does not constitute discrimination.").

different but for his prior demotion. Conversely, LIRR could plausibly argue that Ellis would have been demoted in any event, regardless of his discipline for the derailment, although such an argument would presumably not prevent Ellis from seeking relief for the period between the adjudication of the two April 2nd charges. In light of these competing arguments and the uncertainty of the record, the Court concludes that it must to be left to a jury to decide whether Ellis' termination flowed from his prior demotion.

### 3. *Loss of Promotional Opportunities*

Although Ellis claims that he was denied numerous promotions in 2005, the record reflects that he only applied for two of the positions. He argues that he was denied the opportunity to apply for the remainder because they were posted during the period when he was banned from LIRR property; however, the argument is plainly without merit because the positions were posted in 2005, after Ellis had returned to work.

With respect to the two positions for which Ellis applied, the Court lacks jurisdiction to hear this claim. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (quoting *Butts*, 990 F.2d at 1402). Ellis did not raise failure to promote in his 2003 DHR/EEOC charge; since the positions at issue were not even posted until several months after the

EEOC issued a right-to-sue letter, they could not possibly fall within the scope of the investigation of Ellis' charge.

Although Ellis is barred from raising failure to promote as a stand-alone race discrimination claim, the promotions remain relevant to the claim regarding his 2002 demotion. If Ellis proves that his demotion was based on race, and that but for the demotion, he would have received one of the promotions, the attendant pay increase will constitute an element of his damages.

## B. Retaliation

To reiterate, Ellis claims four instances of retaliation: (1) that the 1999 disciplinary charge for being AWOL was in retaliation for his DHR complaint regarding the charge for cell-phone abuse; (2) that his termination in January 2003 was in retaliation for his May 2002 complaint to LIRR's Diversity Management Office; (3) that LIRR's dissemination of a poster banning him from LIRR premises in March 2004 was in retaliation for his September 2003 DHR/EEOC complaint; and (4) that LIRR failed to consider him for two promotions in 2005 in retaliation for instituting this lawsuit.[4]

Ellis' claim regarding the 1999 AWOL charge is, like his claim regarding the 1999 cell-phone abuse charge, time-barred. He concedes that he never filed an EEOC complaint regarding the charge. While a claim of retaliation for filing an EEOC charge is deemed reasonably related to the underlying charge, *see Butts*, 990 F.2d at 1402, Ellis did

---

[4]Although Ellis did not frame his failure to promote claim as a retaliation claim in his motion papers, he did raise it at oral argument and in his scattershot complaint; therefore, the Court will address the claim.

not, as noted above, file an EEOC complaint for the cell-phone abuse charge. Thus, the Court confines its analysis to the remaining retaliation claims.

*1. Termination*

The same *McDonnell Douglas* burden-shifting framework that applies to disparate treatment claims also applies to retaliation claims, *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); only the elements of the *prima facie* case differ. To establish a *prima facie* case of retaliation, "the employee must show that he was engaged in a protected activity; that the employer was aware of that activity; that there occurred an employment action adverse to the employee; and that there existed a causal connection between the protected activity and the adverse employment action." *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990).

Ellis does not allege any facts to show a causal nexus between his May 2002 Diversity Management complaint and his termination eight months later; nor are the two events sufficiently close in time to support an inference of causation. *See id.* at 85-86 (finding no causal connection where two and one-half months elapsed between protected activity and adverse employment action).

*2. Poster Dissemination*

Ellis has not shown that LIRR's dissemination of a poster banning him from LIRR premises following his termination constituted an adverse employment action. In the retaliation context, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (citation and

internal quotation marks omitted). Terminated employees are often prohibited from freely accessing the premises of their former employer; announcing this fact in a poster would not tend to discourage a reasonable worker from making a charge of discrimination.

## 3. *Failure to Promote*

There is no question but that denial of a promotion qualifies as an adverse employment action. *See Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). And the interval of roughly two months that elapsed between Ellis' institution of this lawsuit and the denials is sufficiently short to support a *prima facie* case. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 759 (2d Cir. 1998). There is, however, no evidence that those making the promotion decisions were aware that Ellis had filed suit. Moreover, there is no evidence suggesting that the stated reason for not promoting Ellis – that his disciplinary history disqualified him from consideration – was a pretext for retaliation. Nevertheless, as stated above, the promotions remain relevant insofar as a jury concludes that the discipline that disqualified him was imposed based on his race.[5]

---

[5]As noted in connection with Ellis' race discrimination claims, his 2003 DHR/EEOC charge does not mention any lost promotion opportunities. While a retaliation claim based on the filing of the charge (such as Ellis' claim regarding the poster dissemination) would be deemed "reasonably related" to the charge, *see Butts*, 990 F2d at 1402, Ellis does not claim that he was denied promotions based on the filing of an EEOC complaint; rather, he claims that the denials were based on the filing of this lawsuit. In light of its disposition on the merits, the Court need not decide whether a plaintiff basing a retaliation claim on the filing of a lawsuit must separately exhaust the claim.

## D. Hostile Work Environment

To prevail on his hostile environment claim, Ellis must show that he was subject to harassment that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). He must also show that the harassment was based on his race. *Cf. Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is axiomatic that in order to establish a sex-based hostile environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." (citation and internal quotation marks omitted)).

Hostile environment claims are reserved for situations in which the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Id.* at 373. Ellis has not produced any evidence of racially derogatory insults; rather, as his counsel clarified at oral argument, his hostile work environment claim is entirely based on the disciplinary charges brought against him. While the Court cannot rule out the possibility that a barrage of baseless disciplinary charges might qualify as harassment, it concludes that two charges in 1999, followed by a cluster of four charges after a three-year gap, are not sufficiently severe or pervasive to constitute an actionable hostile environment. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment." (citations and internal quotation marks omitted)). In addition, while the Court has concluded that there is sufficient evidence to defeat summary judgment on Ellis' claim that his 2002 demotion was based on his race, it declines to infer from that that

every charge Ellis faced was based on his race.

## CONCLUSION

LIRR's motion is denied as to Ellis' disparate treatment claim relative to the 2002 derailment, but granted in all other respects.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2008